## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEAN BERNIER,                          :        Civil No. 3:20-cv-956
                                       :
            Plaintiff                  :        (Judge Mariani)
                                       :
      v.                               :
                                       :
UNITED STATES OF AMERICA, *et al.*,    :
                                       :
            Defendants                 :

*FILED*
*SCRANTON*
FEB 2 4 2022
Per_____
     DEPUTY CLERK

### MEMORANDUM

Plaintiff Jean Bernier ("Bernier"), a former inmate who was housed at all relevant

times at the Allenwood Federal Correctional Institution, in White Deer, Pennsylvania ("FCI-

Allenwood"), commenced this action pursuant to the Federal Tort Claims Act ("FTCA")

against the United States of America, and against the Federal Bureau of Prisons ("BOP")

under the Administrative Procedure Act ("APA") and the Freedom of Information Act

("FOIA").  (Doc. 1).  Presently pending before the Court is Defendants' motion to dismiss

pursuant to Federal Rule of Civil Procedure 12(b)(6) and for summary judgment pursuant to

Federal Rule of Civil Procedure 56.  (Doc. 23).  Bernier failed to respond to the motion and

the time for responding has now passed.[1]  Therefore, the motion is deemed unopposed and

ripe for resolution.  For the reasons set forth below, the Court will grant Defendants' motion.

---

[1]    Bernier was directed to file a brief in opposition to Defendants' motion and was admonished
that failure to file an opposition brief would result in Defendants' motion being deemed unopposed.  (Docs.
28, 30) (citing M.D. Pa. LOCAL RULE OF COURT 7.6).

I.    **Allegations of the Complaint**

Bernier's FTCA claim pertains to an incident report he received at the Federal Correctional Institution, Allenwood Low. (Doc. 1, pp. 3-4). In the incident report, Bernier was charged with use of narcotics. (*Id.* at p. 3). He disputed the charge and argued that neither the incident report nor the DHO report indicated what narcotic he was accused of using. (*Id.*). On May 9, 2019, the Disciplinary Hearing Officer ("DHO") found Bernier guilty of use of narcotics. (*Id.*). The DHO sanctioned Bernier with 54 days in the Special Housing Unit ("SHU") and loss of privileges from April 21, 2019 through June 13, 2019. (*Id.*). Bernier appealed the DHO decision asserting that the decision was not based on "some evidence," as required by BOP regulations. (*Id.*). On appeal, the Central Office upheld the decision of the DHO. (*Id.*). On December 6, 2019, Bernier filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (*Id.*). After Bernier filed the habeas petition, the incident report was expunged. (*Id.*). Bernier alleges that he served his sanctions prior to expungement of the incident report. (*Id.* at pp. 3-4). Bernier does not allege that he lost any good conduct time as a result of the incident report. (*See id.*).

Bernier also sets forth a claim under the Administrative Procedures Act. (*Id.* at pp. 4-7). In his APA claim, Bernier alleges that the BOP library contains inadequate materials, and the BOP does not provide proper accessories for typewriters. (*Id.* at pp. 4-5). He states that "[t]he BOP is preventing the intent of the regulation, which is to provide a functioning typewriter." (*Id.* at p. 5). He asserts that certain inmate property is confiscated

2

when inmates are transferred between BOP facilities and transferred to dormitory housing.
(*Id.* at p. 6). Bernier further alleges that the electronic library system does not contain
addresses for the Legislative and Executive Branch agencies, and there is no access to
state law research materials. (*Id.* at pp. 4-5).

In his FOIA claim, Bernier alleges that he was denied access to documents
regarding his urinalysis, in relation to incident report number 3247829. (*Id.* at p. 7). In May
2019, Bernier requested records under FOIA, and the BOP acknowledged receipt of his
FOIA request in June 2019. (*Id.*). Prior to receiving a response from the BOP, Bernier
initiated this action in May 2020. (*Id.*).

## II.   <u>Statement of Undisputed Facts</u>[2]

On September 3, 2020, Bernier was released from BOP custody. (Doc. 24 ¶ 3).

The BOP has an administrative remedy procedure with respect to inmate complaints,
28 C.F.R. § 542.10, *et seq.* (*Id.* ¶ 4). The purpose of the Administrative Remedy Program
is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own
confinement. (*Id.* ¶ 5). If an inmate raises an issue in a request or appeal that cannot be

---

[2] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil
Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered
paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF
COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material
facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying
genuine issues to be tried. *Id.* Unless otherwise noted, the factual background herein derives from
Defendants' Rule 56.1 statement of material facts. (Doc. 24). Bernier did not file a response to
Defendants' statement of material facts. The Court accordingly deems the facts set forth by Defendants to
be undisputed. *See* LOCAL RULE OF COURT 56.1; *see also* Doc. 28 ¶ 3, Doc. 30 ¶ 3 (advising Bernier that
failure to file a responsive statement of material facts would result in the facts set forth in Defendants'
statement of material facts being deemed admitted).

resolved through the Administrative Remedy Program, the BOP will refer the inmate to the appropriate statutorily mandated procedures. (*Id.* ¶ 6). Inmates are to informally present their complaints to staff and staff is to attempt to resolve the matter. (*Id.* ¶ 7). If informal resolution is unsuccessful, the inmate is then to execute the appropriate form to bring the matter to the attention of the Warden. (*Id.* ¶ 8). The Warden is to respond to the inmate's complaint within twenty calendar days. (*Id.* ¶ 9). If an inmate is dissatisfied with the Warden's response, he may then appeal to the Regional Director within twenty calendar days. (*Id.* ¶ 10). If the response of the Regional Director is not satisfactory, the inmate may then appeal to the Central Office of the BOP within thirty calendar days. (*Id.* ¶ 11). No administrative remedy appeal is considered fully exhausted until reviewed by the BOP's Central Office, which is the final administrative step. (*Id.* ¶ 12). In the ordinary course of business, computerized indexes of all administrative appeals filed by inmates are maintained so that rapid verification may be made as to whether an inmate has exhausted available administrative remedies on a particular issue. (*Id.* ¶ 13).

Between January 1, 2019 and May 11, 2020, Bernier filed a total of five administrative remedies. (*Id.* ¶ 14). A search of the administrative remedies filed by Bernier from January 1, 2019 through May 11, 2020, when he filed the instant complaint, reveals that he only exhausted two administrative remedies (numbers 979714 and 987670). (*Id.* ¶ 15).

Bernier exhausted Administrative Remedy Number 979714-A2, which related to the DHO hearing and incident report 3247829. (*Id.* ¶ 16). On May 31, 2019, Bernier filed Administrative Remedy Number 979714-R1 at the Regional Office level regarding the appeal of the DHO decision for now-expunged incident report 3247829. (*Id.*). On June 4, 2019, Administrative Remedy Number 979714-R1 was rejected because page 4 of the BP-10 was not legible. (*Id.*). The rejection of June 4, 2019 advised Bernier to resubmit the appeal in the proper form within ten days of the date of the rejection notice. (*Id.*). On June 13, 2019, Bernier filed Administrative Remedy Number 979714-R2. (*Id.*). On July 12, 2019, Administrative Remedy Number 979714-R2 was partially granted. (*Id.*). On August 12, 2019, Bernier filed Administrative Remedy Number 979714-A1 with the Central Office. (*Id.*). On August 16, 2019, Administrative Remedy Number 979714-A1 was rejected because Bernier did not submit a complete set of documents or the correct appeal form. (*Id.*). The August 16, 2019 rejection advised Bernier that he could resubmit his appeal in the proper form within fifteen days from the date of the rejection notice. (*Id.*). On August 21, 2019, Bernier filed his appeal on the wrong form, and it was rejected with instructions to refile within ten days from the notice date. (*Id.*). On September 17, 2019, Bernier filed Administrative Remedy Number 979714-A2. (*Id.*). On October 16, 2019, Administrative Remedy Number 979714-A2 was closed with the explanation that it was remanded for further review/rehearing. (*Id.*).

Bernier also exhausted Administrative Remedy Number 987670. (*Id.*). On August

16, 2019, Bernier filed Administrative Remedy Number 987670-F1 at the institution level regarding confiscation of "local use only" items from the commissary. (*Id.*). Bernier indicated that when picking up his items after being transferred to a different BOP facility, certain items were confiscated. (*Id.*). On August 26, 2019, Administrative Remedy Number 987670-F1 was denied and closed. (*Id.*). On September 11, 2019, Bernier filed Administrative Remedy Number 987670-R1 with the Regional Office. (*Id.*). On October 11, 2019, Administrative Remedy Number 987670-R1 was denied and closed. (*Id.*). On November 12, 2019, Bernier filed his Administrative Remedy Number 987670-A1 with the Central Office regarding "local use items." (*Id.*). On January 11, 2020, Administrative Remedy Number 987670-A1 was denied and closed. (*Id.*).

Bernier filed three additional Administrative Remedies (numbers 962398, 977786, and 979425) between January 1, 2019 and May 11, 2020, none of which are related to the claims in the instant complaint. (*Id.* ¶ 17). On January 14, 2019, Bernier filed Administrative Remedy Number 962398, which pertained to requesting medical testing. (*Id.* ¶ 18). On May 9, 2019, Bernier filed Administrative Remedy Number 977786, regarding a request to access legal documents. (*Id.* ¶ 19). On June 3, 2019, Bernier filed Administrative Remedy Number 979425, regarding medical treatment. (*Id.* ¶ 20).

On April 21, 2019, Bernier requested documents from the BOP under FOIA regarding his urinalysis. (*Id.* ¶ 21). By letter dated October 5, 2020, Bernier was provided with the requested documents. (*Id.* ¶ 22). Thirty-six pages of records responsive to

Bernier's request were located.  (*Id.* ¶ 23).  Eleven full pages were eligible for release.  (*Id.* ¶ 24).  Twenty-five partial pages were eligible for release.  (*Id.* ¶ 25).

The Freedom of Information Act, 5 U.S.C. § 552, allows for redacting of records requested from agencies.  (*Id.* ¶ 26).  5 U.S.C. § 552(b)(6) permits withholding information of a personal nature when disclosure would be a clearly unwarranted invasion of personal privacy.  (*Id.* ¶ 27).  5 U.S.C. § 552(b)(7)(C) permits withholding of records and information about individuals when disclosure would constitute an unwarranted invasion of personal privacy.  (*Id.* ¶ 28).  5 U.S.C. § 552(b)(7)(E) permits withholding of records when techniques and procedures for law enforcement investigations or process would be disclosed or provided such disclosure could reasonably be expected to risk circumvention of law.  (*Id.* ¶ 29).  5 U.S.C. § 552(b)(7)(F) permits withholding of records when endangering the safety of life of any individual could reasonably be expected.  (*Id.* ¶ 30).

If Bernier has questions about FOIA, he can contact Darrin Howard, Regional Counsel for the United States Department of Justice Federal Bureau of Prisons.  (*Id.* ¶ 31).  Bernier can also direct questions to Mr. C. Darnell Stroble, the BOP FOIA Public Liaison.  (*Id.* ¶ 32).  Questions regarding FOIA mediation services can be directed to the Office of Government Information Services at the National Archives and Records Administration.  (*Id.* ¶ 33).  If Bernier is not satisfied with the FOIA response, he may file an appeal by writing to the Director, Office of Information Policy, United States Department of Justice.  (*Id.* ¶ 34).  Appeals must be postmarked within 90 days from the date of the FOIA response.  (*Id.* ¶ 35).

Both the letter and the envelope must be clearly marked "Freedom of Information Act Appeal." (*Id.* ¶ 36).

## III.  Legal Standards

### A.  Federal Rule of Civil Procedure 12(b)(6)

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct.  1955, 167 L. Ed. 2d 929 (2007).  The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555).  In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted).  A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint:  First, the court must take note of the elements a plaintiff must plead to state a claim.  Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted).  This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

### B.    Federal Rule of Civil Procedure 56

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then

the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974

F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party

only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127

S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the

summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical
> doubt as to the material facts. Where the record taken as a whole could not
> lead a rational trier of fact to find for the nonmoving party, there is no genuine
> issue for trial. The mere existence of some alleged factual dispute between
> the parties will not defeat an otherwise properly supported motion for
> summary judgment; the requirement is that there be no genuine issue of
> material fact. When opposing parties tell two different stories, one of which is
> blatantly contradicted by the record, so that no reasonable jury could believe
> it, a court should not adopt that version of the facts for purposes of ruling on a
> motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## IV.   Discussion

### A.   FTCA Claim

#### 1.   *The BOP is an Improper Party*

Defendants seek dismissal of the FTCA claim against the BOP on the ground that

the United States is the only proper party under the FTCA. (Doc. 25, pp. 15-16). The

United States Court of Appeals for the Third Circuit has set forth the following:

> [T]he district courts . . . shall have exclusive jurisdiction of civil actions on
> claims against the United States." 28 U.S.C. § 1346(b)(1). As the Supreme
> Court has stated, "[t]he United States, as sovereign, is immune from suit save

as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) (citations omitted). Thus, FTCA plaintiffs must meet the criteria of § 1346(b)(1) before a district court may exercise jurisdiction.

In particular, § 1346(b)(1) lists six threshold requirements that a plaintiff's claim must satisfy to confer jurisdiction. A claim must be made

> "[1] against the United States, [2] for money damages, ... [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

*FDIC v. Meyer*, 510 U.S. 471, 477, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (quoting 28 U.S.C. § 1346(b)(1)) (alterations in original). The cause of action in an FTCA claim, on the other hand, must come from state tort law. *Id.* at 478, 114 S.Ct. 996 (describing state tort law as "the source of substantive liability under the FTCA").

*CNA v. United States*, 535 F.3d 132, 140-41 (3d Cir. 2008), as amended (Sept. 29, 2008).

Because the United States is the only proper FTCA party, the FTCA claim against the BOP will be dismissed.

### 2. *Failure to Establish More Than a De Minimis Physical Injury Bars a FTCA Claim*

Bernier seeks an award of monetary damages from the United States under the FTCA. (Doc. 1, p. 9). Under § 1346(b)(1) of the FTCA, federal district courts generally have jurisdiction over tort claims against the United States for "injury or loss of property, or personal injury or death" caused by the negligence of a federal employee, if the claim would

give rise to liability in the state where the tort occurred.  28 U.S.C. § 1346(b)(1).  However, as part of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997, section 1346(b)(2) of the FTCA precludes inmate tort actions against the United States for "mental or emotional injury suffered while in custody without a prior showing of physical injury . . . "  28 U.S.C. § 1346(b)(2).  Similarly, § 1997e(e) of title 42 provides: "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  More than a *de minimis* physical injury must be alleged as a predicate to allegations of mental or emotional injury.  *See Mitchell v. Horn*, 318 F.3d 523, 536 (3d Cir. 2003).

Bernier does not allege that he suffered *any* physical injury, nor does he allege that he suffered more than a *de minimis* injury, resulting from the sanctions imposed by the DHO.  *See Mitchell*, 318 F.3d at 534-36.  Because Bernier failed to meet the physical injury requirements of 28 U.S.C. § 1346(b)(2), the FTCA claim will be dismissed.

Moreover, only sanctions that "impose [ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," may be deemed excessive.  *Moles v. Holt*, 221 F. App'x 92, 95 (3d Cir. 2007) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  The penalties imposed here, deprivation of property, loss of various privileges, and placement in the SHU, do not work an "atypical and significant hardship" on Bernier and do

not serve to extend his confinement beyond the expected parameters of his sentence. *Sandin*, 515 U.S. at 484-85.  Consequently, he is not entitled to relief on this claim.

## B.  APA and FOIA Claims

### 1.  *Exhaustion of Administrative Remedies*[3]

Defendants argue that Bernier failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act [4] with respect to his APA and FOIA Claims. (Doc. 25, pp. 21-26).  Pursuant to the PLRA, a prisoner must pursue all available avenues of relief through the applicable grievance system before initiating a federal civil rights action. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.").  Section 1997e provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other [f]ederal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement is mandatory.  *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *Booth*, 532

---

[3]  Because Defendants raised the issue of exhaustion of administrative remedies, the Court notified the parties that it would consider exhaustion in its role as factfinder in accordance with *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018) and *Small v. Camden Cty.*, 728 F.3d 265 (3d Cir. 2013).  (Doc. 31).

[4]  The Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

The Third Circuit has further provided that there is no futility exception to Section 1997e's exhaustion requirement.  *See Nyhuis v. Reno*, 204 F.3d 65, 75-76 (3d Cir. 2000). Courts have typically required across-the-board exhaustion by inmates seeking to pursue claims in federal court.  *See id.*  Additionally, courts have interpreted this exhaustion requirement as including a procedural default component, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding with a claim in federal court.  *See Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004); *Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) (providing that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court").  Courts have also concluded that inmates who fail to complete the prison grievance process in a full and timely manner are barred from subsequently litigating claims in federal court.  *See, e.g., Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000); *Bolla v. Strickland*, 304 F. App'x 22 (3d Cir. 2008).

This broad rule favoring full exhaustion allows for a narrowly defined exception; if the actions of prison officials directly caused the inmate's procedural default as to a grievance, the inmate will not be required to strictly comply with this exhaustion requirement.  *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000).  However, courts also recognize a clear

"reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." *Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will be excused only "under certain limited circumstances." *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005). In *Ross v. Blake*, the Supreme Court outlined the three instances in which remedies would not be "available" such that exhaustion may be excused: (1) when an administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative remedies are so unclear that "no ordinary prisoner can make sense of what it demands"; and, (3) where prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 643-44 (2016); *see also Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018). The Third Circuit Court of Appeals has held that "a prisoner exhausts his administrative remedies as soon as the prison fails to respond to a properly submitted grievance in a timely fashion." *Shifflett v. Korszniak*, 934 F.3d 356, 359 (3d Cir. 2019).

The record simply does not support a finding that the administrative process was unavailable to Bernier. To the contrary, it establishes that Bernier had ready access to the administrative remedy process. It is clear that Bernier failed to properly his exhaust administrative remedies with respect to his APA and FOIA claims before initiating the instant

action.  Moreover, Bernier has not demonstrated that his failure to fully pursue such

administrative relief should be excused.

In the absence of competent proof that an inmate was misled by corrections officials,

or some other extraordinary circumstances warranting a departure from strict compliance

with the exhaustion requirement, courts frequently reject inmate requests for their failure to

exhaust to be excused.  An inmate, therefore, cannot excuse a failure to comply with these

grievance procedures in a timely manner by simply claiming that his efforts constituted

"substantial compliance" with this statutory exhaustion requirement.  *Harris*, 149 F. App'x at

59.  Furthermore, an inmate cannot avoid this exhaustion requirement by merely alleging

that the administrative policies were not clearly explained to him.  *Warman*, 49 F. App'x at

368.

Here, Defendants argue that Bernier has failed to exhaust his administrative

remedies with respect to his APA and FOIA claims.  Defendants have supported this

argument with record evidence, including the declaration of BOP Attorney Matthew Lavelle

and the Administrative Remedy Generalized Retrieval.  (Doc. 24-1).  From January 1, 2019

to May 11, 2020, Bernier filed five administrative remedies.  It is undisputed that Bernier

exhausted Administrative Remedy Number 979714, regarding incident report number

3247829, and Administrative Remedy Number 987670, regarding confiscation of certain

inmate items.  It is also undisputed that Bernier failed to exhaust any administrative

remedies concerning his placement in the SHU, the loss of privileges related to incident

report number 3247829, his complaints regarding the law library, paying for typewriter

ribbon, his housing arrangements if his security level changed, and his FOIA request.

Bernier failed to refute Defendants' argument.  Notably, he has not provided a verified

affidavit, declaration, or any other statement made under the penalty of perjury to support

any argument that he properly exhausted his APA and FOIA claims.

In light of the undisputed facts and relevant evidence of record, the Court concludes

that Bernier failed to produce any evidence to overcome Defendants' summary judgment

motion and cannot argue against summary judgment by merely relying on unsupported

assertions, inferences based upon a speculation or conjecture, or unverified, conclusory

allegations in his complaint.  Under Rule 56, Bernier was required to go beyond his

pleadings with affidavits or the like in order to establish the existence of a genuine dispute of

material fact.  *See Celotex Corp.,* 477 U.S. at 324.  Because he has failed to do so, the

Court concludes that Bernier has not properly exhausted his APA and FOIA claims, and

Defendants are entitled to the entry of summary judgment in their favor on these claims.

Beyond this threshold concern, Bernier's APA and FOIA claims fail for the following

reasons.

      **2.**     *Failure to State a Claim Under the Administrative Procedure Act*

Bernier asserts that he is suing under the Administrative Procedure Act in order to

compel the BOP to comply with its own policies.  The APA provides that "[a]gency action

made reviewable by statute and final agency action for which there is no other adequate

remedy in a court are subject to judicial review." 5 U.S.C. § 704. There are "two conditions that generally must be satisfied for agency action to be 'final' under the APA": (1) "the action must mark the consummation of the agency's decisionmaking process"; and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *United States Army Corps of Eng'rs v. Hawkes Co., Inc.*, 136 S. Ct. 1807, 1813 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). If the action is not a "final agency action," 5 U.S.C. § 704, "a plaintiff who challenges such an action cannot state a claim under the APA," and "the action must be dismissed." *Chehazeh v. Att'y Gen. of the U.S.*, 666 F.3d 118, 126 n. 1 (3d Cir. 2012) (internal quotations marks and citations omitted). Bernier failed to allege any final agency action that he is challenging. Therefore, Bernier's claim under the APA is subject to dismissal.

### 3.    *FOIA Claim*

Under FOIA, all agencies are required to respond to requests within ten days and are to acknowledge and provide a tracking number to the requester. 5 U.S.C. § 552(7)(a). If the requestor is dissatisfied with the response, an administrative appeal may be filed with the supervisory official agency or the Office of Government Information Services. If the requester is not satisfied with any of the responses, the request can be challenged in federal court. 5 U.S.C. § 552(a)(4)(B). Additionally, under FOIA, an agency has a duty to conduct a reasonably adequate search for responsive records. To be adequate, a search must be reasonably calculated to uncover all responsive documents.

In May 2019, Bernier made a FOIA request to the BOP pertaining to his urinalysis performed on April 21, 2019. Bernier initiated the instant federal action on or about May 11, 2019. In June 2019, Bernier received an acknowledgement of his request for records. (Doc. 1, p. 7). On October 5, 2020, the requested records were sent to Bernier. (Doc. 24 ¶ 22; Doc. 24-1, pp. 5-6). It is clear that Bernier filed this action before the agency was given the opportunity to respond to his request. Because the agency has since responded to Bernier's request, his FOIA claim is subject to dismissal as moot.

### 4.    *Request for Injunctive Relief*

It is undisputed that Bernier is no longer in BOP custody. The mootness doctrine recognizes that "[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-99 (3d Cir. 1996). An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims. *Abdul-Akbar v. Watson*, 4 F.3d 195, 206-07 (3d Cir. 1993); *see Griffin v. Beard*, 401 F. App'x 715 (3d Cir. 2010) (transfer from SCI-Huntingdon renders inmate injunctive relief claim moot).

Bernier seeks injunctive relief in the form of requiring the BOP to include state materials in the electronic law library, provide inmates with a typewriter wheel, ribbon, and correction paper, allow inmates to retain items that are sold in all BOP facilities when transferred, assess an inmate when transferring them from a cell to dormitory housing, and

to produce the urinalysis documents which he requested under FOIA on April 21, 2019.

(Doc. 1, pp. 9-10).  His request for injunctive relief is directed at the BOP and relates to his

confinement at FCI-Allenwood.  This is problematic as he is no longer in BOP custody.  In

this instance, the release of Bernier from BOP custody renders his request for relief moot.

Therefore, the request for injunctive relief must be dismissed.

## V.    Leave to Amend

When a complaint fails to present a *prima facie* case of liability, district courts must

generally grant leave to amend before dismissing the complaint.  *See Grayson v. Mayview

State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d

Cir. 2000).  Specifically, the Third Circuit Court of Appeals has admonished that when a

complaint is subject to dismissal for failure to state a claim, courts should liberally grant

leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515

F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).  The above claims

set forth by Bernier are legally and factually flawed.  The Court concludes that granting

Bernier leave to amend would be futile as he has failed to oppose Defendants' motion,

despite being afforded two extensions of time to do so.

## VI.   <u>Conclusion</u>

Based on the foregoing, Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and for summary judgment pursuant to Federal Rule of Civil Procedure 56, will be granted.  (Doc. 23).  A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: February ___, 2022